SIEMON v. ELIZABETH WILSON et al.

Where confidential relationship exists and one party is exposed to the designs of another and a voluntary settlement or deed of gift is made, the law requires the party benefited to show, affirmatively, free will and knowledge and the intervention of a disinterested third person.

Weakness and folly in the disposition of property are not sufficient to warrant a court to set aside a conveyance.

May 12, 1835.

Gift.
Influence.

BILL for partition of a house and lot, known as No. 17 Chatham street in the city of New-York.

In the month of December, one thousand eight hundred, these premises were conveyed to John Henry Siemon, Maria Elizabeth Siemon, Christopher Siemon and Amelia Gertrude Siemon, the four children of Walrab Siemon, as tenants in common. In the year one thousand eight hundred and twenty-two or one thousand eight hundred and twenty-three, Christopher, one of the grantees, died intestate and without issue; by means of which, his one undivided fourth part of the premises vested in his father, Walrab Siemon, as his heir at law.

By a deed of bargain and sale, dated the fifteenth day of May, one thousand eight hundred and twenty-seven, purporting to be for the consideration of twenty-five hundred dollars, Walrab Siemon and Hester his wife conveyed to his daughter, Maria Elizabeth Wilson, formerly Maria Elizabeth Siemon, one equal undivided fourth part, being the share which he, the father, had derived from his deceased son Christopher. The execution of this deed was, in due form of law, acknowledged before a commissioner on the sixteenth of May, one thousand eight hundred and twenty-seven; but it was not recorded until the eleventh day of November, one thousand eight hundred and thirty-one.

In the latter part of the month of October, one thousand eight hundred and thirty-one, Walrab Siemon died intestate. After his death, the bill was filed in this cause for partition; and it proceeded upon the ground that this one fourth had de-

scended to his surviving children and grandchildren and did not pass to Maria Elizabeth Wilson by the conveyance, which the bill attempted to impeach for fraud and undue influence. On the other hand, she set up the deed ; insisted upon its validity ; and claimed to be entitled to the one fourth which it purported to convey, in addition to her original quarter.

1835.

SIEMON
v.
WILSON.

The only contest was in relation to this deed, whether it should be supported or set aside. The court, as it will be seen, sustained the deed ; and the case is reported to mark the points applicable to conveyances of this character.

The cause came before the court on pleadings and proofs.

Mr. *Williams* and Mr. *Charles Edwards* for the complainant.

Mr. *Griffin* for the defendant, Maria Elizabeth Wilson.

THE VICE CHANCELLOR :—All the charges and allegations of the bill, as grounds for avoiding the deed, appear to be fully met and denied by the answer of the defendant, Mrs. Wilson ; and she shows how she became a purchaser from her father of his undivided one fourth part of the lot in question, and, at the same time, of another lot which he owned, for a fair, valuable consideration. As to the capacity of the grantor to convey at the time of executing the deeds, I think it is not only satisfactorily proved by the testimony of the two most important witnesses examined on the part of the complainant, Mr. Andraiese and Mr. Conrad, but also by a number of witnesses examined on the part of the defendant, Mrs. Wilson. These witnesses generally prove that, although he was an old man, approaching to eighty years of age, yet, in the year one thousand eight hundred and twenty-seven, and until within the last two years of his life, he was in possession of his mental faculties sufficiently for all ordinary purposes of business, for making bargains and executing deeds. With regard to the circumstances attending the execution of the deed in question, there is nothing to show fraud or circumvention in the manner of obtaining his signature, or the acknowledgment of it before the commissioner, nor to show that the grantor did not clearly understand the purport and effect of what he was doing. He was attended by his friend, Mr. Andraiese, to the office of the late

1836.
*April* 4.

Benjamin Ferris, Esquire, who made out the two deeds ; and who, together with Mr. Andraiese, became the subscribing witnesses to the execution both by the grantor, Walrab Siemon, and his wife. And, although Mr. Andraiese had forgotten that two deeds were executed on that occasion, and being examined, was surprised to find his signature as a witness to the two instruments, yet there can be no doubt of the fact that both deeds were openly and freely executed at the same time. If there were any trick or management, by which the grantor's signature and acknowledgment and also those of his wife were obtained to two different and distinct instruments, when only one was intended to be executed, it must have been played off also upon Mr. Andraiese, an intelligent man and a close observer of what was doing. The art of legerdemain, I should hardly think, could be carried so far ; and, unless we can suppose the late Benjamin Ferris, the other subscribing witness, and the late William Seaman, the commissioner who certified on each instrument to the due acknowledgment thereof by the parties, to have been concerned in perpetrating a downright fraud, they too must have been most strangely deluded.

But it is alleged that, aside from any deception of that sort in the ceremonial of the deed, there was an undue influence exercised over the old man by his daughter; leaving him no longer a free agent, and rendering all transactions of this sort between them void.

There is no positive evidence that she held an influence or ever attempted to exercise a control over him, for any dishonest or improper purpose. If such were the fact, it can only be inferred from the relation in which they stood to each other. They lived together ; he was advanced in years, and received from her all such attentions as his wants and comforts required ; and, although this may have proceeded from a sense of filial duty and affection toward an aged parent, it cannot be denied that it gave her opportunities which she might have improved to practice upon him with a view of obtaining his property. In such cases, therefore, where a confidential relationship exists, and one party is exposed to the arts and designs of the other, and a voluntary settlement or deed of gift is made, the policy of the law requires the party claiming the benefit of such a deed or settlement to show affirmatively that it pro-

1835.

SIEMON
v.
WILSON,

ceeded from the donor's own free will, and was fully understood by him, and carried into effect by the intervention of some disinterested third person. If all this appears, the gift will be supported : *Griffiths* v. *Robins*, 3 Mad. R. 191 ; *Pratt* v. *Barker*, 1 Simon's R. 1.

Putting the deed in question, then, on the footing of a deed of gift, I think there is sufficient evidence of its being the result of the father's own choice, after full deliberation ; and that he executed it with a clear understanding of what he was doing. This is manifest from his conversations with some of his friends, both before and after the transaction, and particularly with Mr. Conrad. But it was not a deed of gift. Mrs. Wilson had become a purchaser for a valuable consideration ; and the giving of the deed in question, and the consideration for it, grew out of the same arrangement as the other deed which was executed at the same time. It formed a part of the same transaction, the object of which was to secure a living for the father, and some provision for his wife, by way of settling all difficulties with her from whom he had been separated a number of years. In pursuance of this arrangement, Mrs. Wilson became surety for the payment of an annuity to his wife ; and executed a bond and mortgage to him for five thousand dollars of the purchase money. Causes for avoiding the contract, as in *Whelan* v. *Whelan*, 3 Cowen, 537, I have not been able to discover in this case ; such as, fear that his property was in danger of being swept away by the difficulties between him and his wife ; advantage taken of such fears, or of his age and imbecility, or of his partiality as a parent towards this daughter, to strip him of his property, abused confidence, or gross inadequacy of price.

In the absence of facts or circumstances to make out any of these grounds of relief, it is not for this court to interfere. A man may exhibit weakness and folly in entering into a contract and in disposing of his property, but, as remarked by the late Lord Chancellor Hart, in *Hickson* v. *Aylward*, 3 Molloy's Rep. 17, it is not required that a man should be an oracle or a philosopher to be capable of contracting. He may bind himself perfectly, (where fraud is not practiced upon him) although he be a man without great abilities, if he have sufficient abi-

lity to keep himself above the reach of a commission of lunacy.

Upon the whole, therefore, I must pronounce in favor of the deed in question.

Order of reference as to title accordingly.